UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:21-cv-21663-JEM/Becerra

ROLANDO GODINEZ,

      Plaintiff,

v.

TEKTON CONSTRUCTION, CORP.;
TEKTON CONSTRUCTION GROUP LLC;
JORGE HERNANDEZ; and MATRIX
CONSTRUCTION BUILDERS, INC.,

      Defendants.

_____/

**REPORT AND RECOMMENDATION**[1]

**THIS CAUSE** came before the Court on Plaintiff Ronaldo Godinez's ("Plaintiff") Motion for Final Default Judgment as to Defendant Matrix Construction Builders, Inc. *Only* (the "Motion"). ECF No. [53]. Defendant Matrix Construction Builders, Inc. ("Defendant Matrix") did not file a response to the Motion, and the time to do so has passed. Upon due consideration of Plaintiff's Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby **RECOMMENDED** that the Motion be **GRANTED IN PART AND DENIED IN PART**.

**I.    BACKGROUND**

On August 9, 2021, Plaintiff filed his First Amended Complaint against Defendants Tekton Construction, Corp., Tekton Construction Group LLC, Matrix Construction Builders, Inc. (collectively, the "Corporate Defendants"), and Jorge Hernandez (collectively with the Corporate

---

[1] This matter was referred to the undersigned by the Honorable Jose E. Martinez, United States District Judge. ECF No. [54].

1

Defendants other than Defendant Matrix, the "Tekton Defendants"). ECF No. [24]. Plaintiff alleged claims pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), for unpaid overtime wages, as well as liquidated damages, and reasonable attorneys' fees and costs. Plaintiff also brought a claim for retaliatory discharge and coercion in violation of Section 440.205 of the Florida Statutes. *Id.*

When Defendant Matrix failed to respond to the Complaint, Plaintiff filed a Motion for Entry of Clerk's Default Against Defendant Matrix, ECF No. [37], and a Clerk's Default was entered. ECF No. [38]. Thereafter, Plaintiff filed the instant Motion, requesting the entry of default judgment against Defendant Matrix. ECF No. [53]. Plaintiff notes that although the Court has approved a settlement agreement between Plaintiff and the Tekton Defendants (the "Settlement Agreement"), that Settlement Agreement "does not entirely resolve all [of] the Plaintiff's claims raised in the First Amended Complaint." *Id.* at 2. Thus, Plaintiff seeks entry of "a final default judgment in an amount totaling the difference between the unpaid wages alleged in the First Amended Complaint . . . less the amount approved by the Court" in the Settlement Agreement. *Id.* Plaintiff requests an award of $24,811.82 for unpaid overtime wages ($12,405.91) and liquidated damages ($12,405.91), and $9,500.00 for compensatory mental damages due to emotional distress, for a total of $34,311.82 in damages, plus $1,413.75 in attorneys' fees and costs. *Id.* at 2–3. In support of his Motion, Plaintiff submitted his Declaration, ECF No. [53-1], and the Declaration of Attorneys' Fees and Costs of R. Martine Saenz, Plaintiff's attorney, ECF No. [53-2].

II.     **ANALYSIS**

Federal Rule of Civil Procedure 55 sets forth the procedure for obtaining a default judgment. Subsection (a) provides that the Clerk of Court must enter default when the defendant fails "to plead or otherwise defend." Fed. R. Civ. P. 55(a). Upon the entry of a clerk's default,

the Court must enter a judgment "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, . . . on the plaintiff's request, with an affidavit showing the amount due . . . ." *Id.* at 55(b)(1). While "[a]ll well-pleaded allegations of fact in the complaint are deemed admitted upon entry of default, [] before entering a default judgment the Court must ensure . . . that the complaint adequately states a claim for which relief may be granted." *United State v. Eye*, No. 10-60739-CIV, 2010 WL 11610271, at *2 (S.D. Fla. Aug. 31, 2010) (citing *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009)). That is, in determining whether default judgment may be entered, courts must review the allegations in the complaint to determine whether there is a "sufficient basis in the pleadings for the particular relief sought." *United States v. Genesis II Church of Health & Healing*, 476 F. Supp. 3d 1283, 1289 (S.D. Fla. 2020) (citing *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x. 860, 863 (11th Cir. 2007)); *see also Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (noting that the "sufficient basis" standard is akin to the motion to dismiss standard). Once liability has been established, "[d]amages may be awarded only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (quotations omitted). Rule 55 does not require an evidentiary hearing on damages where the amount claimed is either liquidated or capable of arithmetic calculation. *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 Fed. Appx. 737, 746–47 (11th Cir. 2017) ("[E]videntiary hearings are required in all but limited circumstances, such as when hearing any additional evidence would be truly unnecessary to a fully informed determination of damages") (quotations omitted); *Tara Productions, Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x. 908, 911–12 (11th Cir. 2011) (noting that under Rule 55, district courts are not required to conduct evidentiary hearings).

**A. Defendant is Liable Under the FLSA for Plaintiff's Unpaid Wages. (Count I)**

Plaintiff is entitled to a final default judgment on his unpaid wages claim (Count I). "To establish a claim for unpaid wages under the FLSA, a plaintiff must show (1) that an employment relationship existed with the Defendant, (2) that the parties are covered by the FLSA, and (3) that some work was performed for which the plaintiff was not properly compensated, providing the amount of such liability at least by a just and reasonable inference." *Vasquez v. Moving Dudes LLC*, No. 19-CV-60663, 2020 WL 419385, at *2 (S.D. Fla. Jan. 27, 2020). After careful review of Plaintiff's First Amended Complaint and the Declarations submitted in support of Plaintiff's Motion, the Court finds that Plaintiff has alleged all the elements of a claim for unpaid wages under the FLSA.

First, Plaintiff alleges he was employed by Defendant Matrix as a construction worker during the relevant period. ECF No. [24] ¶¶ 6, 15, 18.[2] Second, Plaintiff alleges that Defendant Matrix is a covered enterprise under the FLSA because the annual gross revenue of the Corporate Defendants was in excess of $500,000.00 and/or Plaintiff was working in interstate commerce. *Id.* ¶¶ 4–5, 14. Finally, Plaintiff alleges that he performed work for which he was not properly compensated. Specifically, Plaintiff alleges that he "was not compensated time and one half for the hours he worked in excess of 40 per week" and that he worked fifty to sixty hours, on average, each week from May 2018 through May 2020. *Id.* ¶ 19. The Court finds that these allegations are specific and sufficient as to the elements of his FLSA claim. *See Cancienne v. Drain Master of South Florida, Inc.,* 2008 WL 5111264 at *1 (S.D. Fla. Dec.3, 2008) (well-pleaded FLSA allegations establish liability upon a defendant's default). Accordingly, given the well-pleaded

---

[2] Plaintiff alleges that he was an employee of Corporate Defendants, including Defendant Matrix. *Id.* ¶ 4–5, 15, 18. Moreover, Plaintiff alleges that Corporate Defendants are either "an integrated enterprise or an agent of each other" or "each company is an enterprise under the Act." *Id.* ¶ 4.

allegations, Count I is deemed admitted. *See Eye*, 2010 WL 11610271, at *2 ("All well-pleaded allegations of fact in the complaint are deemed admitted upon entry of default.").

### B. Defendant is Liable for Retaliatory Discharge and Coercion Under 440.205, Florida Statutes. (Count III)

Plaintiff is also entitled to final default judgment on his retaliatory discharge claim. (Count III). Under Section 440.205 of the Florida Statutes, "[n]o employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Worker's Compensation Law." Fla. Stat. § 440.205. Accordingly, "[t]o state a prima facie case for retaliatory discharge under Fla. Stat. § 440.205, Plaintiff must show that he (1) engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the Plaintiff's protected activities." *Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1295 (S.D. Fla. 2014) (citing *Little v. United Technologies,* 103 F.3d 956, 959 (11th Cir.1997)). Based on Plaintiff's First Amended Complaint and the Declarations submitted in support of Plaintiff's Motion, Plaintiff alleges the elements to state a claim for retaliatory discharge and coercion.

First, Plaintiff alleges that after he notified Defendant Matrix of a work-related injury and requested medical attention, he received worker's compensation benefits but then "once the Plaintiff's doctors released Plaintiff to go back to work with restrictions, Corporate Defendants stopped paying Plaintiff worker's compensation benefits and told Plaintiff he could not work for Corporate Defendants." ECF No. [24] ¶¶ 35–37. Second, Plaintiff alleges that he was terminated, or constructively discharged, and stopped receiving payment of worker's compensation benefits. *Id.* ¶¶ 37–38. Finally, Plaintiff alleges that "the sole apparent reason or one of the motivating factors for the termination of Plaintiff's employment and the non-payment of worker's compensation benefits was that Plaintiff sought or attempted to seek compensation of benefits

under the Workers' Compensation Law, as Plaintiff was entitled to do." *Id.* ¶¶ 35, 39. The Court finds that these allegations are specific and sufficient as to this element. Defendant Matrix defaulted and admitted these allegations and is jointly and severally liable, along with the other Corporate Defendants, to Plaintiff for retaliatory discharge and coercion. *See Baez v. B&B of Fowler, Inc.*, No. 8:21-CV-24-WFJ-AEP, 2021 WL 1854560, at *6 (M.D. Fla. May 10, 2021) ("By defaulting, Defendant B&B admits that Plaintiff suffered emotional distress as a result of his termination.").

### C. Plaintiff is Entitled to $12,405.91 in Actual Damages and $12,405.91 in Liquidated Damages, For a Total Unpaid Wages Damages Award of $24,811.82.

Given that Defendant Matrix is jointly and severally liable with the other Defendants, the Court must consider whether inconsistent adjudications might result from an entry of default judgment. "The general rule, derived from the seminal case of *Frow v. De La Vega*, 82 U.S. 552, 554 (1872), is that when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted." *Mayorga v. Stamp Concrete & Pavers, Inc.*, No. 13-81274-CIV, 2015 WL 3556972, at *2 (S.D. Fla. June 4, 2015) (quotation omitted). Here, the other Defendants have settled this case and the Court has entered an Order on Motion to Approve Settlement Agreement, dismissing the case with prejudice as to Defendants Tekton Construction, Corp., Tekton Construction Group LLC, and Jorge Hernandez. ECF No. [50] at 2.

Plaintiff's "First Amended Complaint alleges $20,800.00 in unpaid wages plus an equal amount in liquidated damages, totaling $41,600.00." ECF No. [53] at 2. According to Plaintiff's Declaration, he worked an average of fifty to sixty hours per week from approximately May 2018 through May 2020, earning $20.00 per hour. ECF No. [53-1] ¶¶ 4–5. Accordingly, Plaintiff claims

he was "underpaid the total of $20,800.00 in overtime wages while employed by the Defendants." *Id.* ¶ 6; *see also* ECF No. [53] at 4 (noting the calculation of unpaid overtime wages).

The settlement agreement between Plaintiff and the Tekton Defendants includes payment to Plaintiff for unpaid wages and liquidated damages in the amount of $16,788.18. *Id.* at 4. Accordingly, Plaintiff seeks the difference between the amount of damages he alleges in the First Amended Complaint and the amount in the Settlement Agreement, which is $24,811.82, specifically $12,405.91 in unpaid wages and $12,405.91 in liquidated damages, for Counts I and III. *Id.* at 4, 7. After full consideration of the information included in Plaintiff's Declaration and the First Amended Complaint which is deemed admitted by virtue of Defendant Matrix's default, the undersigned finds that Plaintiff is owed the amount of damages sought for unpaid overtime wages, $24,811.82.

**D. Plaintiff is Entitled to $3,000.00 in Emotional Distress Damages.**

"An employer who violates Fla. Stat. § 440.205 has committed an intentional tort, thereby exposing itself to liability for damages for emotional distress." *Baez*, 2021 WL 1854560, at *5. As discussed *supra*, Defendant Matrix, by virtue of its default, has admitted Plaintiff's retaliatory discharge and coercion claim. However, a plaintiff's allegations regarding damages are not deemed admitted by virtue of a default. *See Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). Instead, the Court "has an obligation to assure that there is a legitimate basis for any damage award it enters." *Id.* Where damages are not liquidated and cannot be ascertained objectively through an arithmetic calculation, a hearing is necessary. *See Safari Programs, Inc.*, 686 Fed. App'x. at 746.

In support of his claim for emotional distress damages, Plaintiff submitted an affidavit describing the emotional distress he suffered as a result of his discharge. In his affidavit, Plaintiff

asserts that he "suffered a great deal of mental anguish and emotional distress resulting from [his] wrongful termination" and that his "stress derives from [his] belief that the Defendants treated [him] like this" as a result of exercising his rights following his work-related injury. ECF No. [53-1] ¶ 10. Moreover, he asserts that he "had to worry about being able to provide for [his] daily living expenses, including rent, gas, food, and other staples of life." *Id.* According to Plaintiff, his stress, depression, and anxiety have continued and interfere with his ability to sleep. *Id.* ¶ 11.

The undersigned also held an evidentiary hearing limited to the issue of the proper amount of emotional distress damages. *See* ECF No. [55]. At the hearing, Plaintiff testified that he was stressed after his discharge and had problems falling asleep because he was worried about how he would earn money to survive. Two years following his injury, Plaintiff remains unemployed. He stated that he has been unable to work because his injury still interferes with his ability to walk, which is necessary for construction jobs. Moreover, Plaintiff attested that he has applied for other positions since his termination, and although he attempted to work for one job, he was only able to work for half the day because his foot started hurting, and so he had to return home and has not worked since.

When determining a fair and reasonable amount of emotional distress damages, in addition to the factual allegations supporting relief, courts should consider how a plaintiff's claimed damages compare with similar "cases in which courts have considered [the] appropriate amount of damages for emotional distress claims." *Vaccaro v. Custom Sounds, Inc.*, No. 3:08CV776-J-32JRK, 2010 WL 1223907, at *6 (M.D. Fla. Mar. 4, 2010), *report and recommendation adopted*, No. 3:08-CV-776-J-32JRK, 2010 WL 1248841 (M.D. Fla. Mar. 24, 2010). In *Vaccaro*, the court credited plaintiff's testimony that he was "upset and embarrassed" because "[d]uring his unemployment, Plaintiff was engaged to be married, had a two-year-old daughter, and had to rely

8

on his parents to support his family," such as "stay[ing] with his soon to-be father-in-law" and his mother helping "him pay for necessaries, his cellular phone bill, and insurance" and these "events took a toll on his relationship with his fiancé." *Id.* However, the court considered that it was a "relatively unremarkable FLSA case [that does] not warrant an award of $10,000.00 for such distress," as sought by the plaintiff, and instead determined that "as a factual matter . . . $5,000.00 is a fair and reasonable amount." *Id.*; *see also Baez*, 2021 WL 1854560, at *6 (where plaintiff alleged that his termination caused "emotional distress, anxiety, humiliation, shame, embarrassment, and mental suffering" and "caused him to worry about finding a new job and paying his bills" but did not allege "any physical ailments, the Court believe[d] $4,000 is a fair and reasonable amount of damages.").

Considering the mental anguish that Plaintiff continues to experience, that Plaintiff's settlement with the other Defendants included an amount for emotional distress damages, and the amount of emotional distress damages other courts have awarded in similar cases, the undersigned finds that $3,000.00 is a fair and reasonable amount of damages for Plaintiff's emotional distress.

### E. Plaintiff is Entitled to $1,413.75 in Attorneys' Fees and Costs.

"The FLSA additionally authorizes an award of attorney's fees to the prevailing plaintiff in a proceeding to enforce its wage provisions." *Vasquez*, 2020 WL 419385, at *2; *see* 29 U.S.C. § 216(b). The Court finds that Plaintiff, as the prevailing party in this action, including as to his FLSA claim under Count I, is entitled to his reasonable attorneys' fees and costs. The Eleventh Circuit has adopted the lodestar method to determine the reasonableness of an award of attorneys' fees. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). To determine a lodestar amount, a court must ascertain a reasonable hourly rate and multiply it by the number of hours an attorney reasonably expended on the litigation. *Id.* "The Court may use its

own experience in assessing the reasonableness of attorneys' fees and may form an independent judgment either with or without witnesses." *Phiffer v. Greenstar Landscaping, Co.*, No. 21-22391-CIV, 2021 WL 6424630, at *2 (S.D. Fla. Dec. 15, 2021), *report and recommendation adopted*, No. 21-22391-CIV, 2022 WL 104265 (S.D. Fla. Jan. 11, 2022) (citing *Norman*, 836 F.2d at 1299). The burden of establishing that the request for attorneys' fees is reasonable rests with the applicant, who must submit evidence regarding the number of hours expended and the hourly rate claimed. *Id*. Evidence in support of the applicant's request requires "sufficient particularity so that the district court can assess the time claimed for each activity." *Id*. The party seeking attorneys' fees must supply the Court with "'specific and detailed evidence' in an organized fashion." *Machado v. Da Vittorio*, *LLC*, No. 09–23069–CIV, 2010 WL 2949618, at *1 (S.D. Fla. July 26, 2010) (quoting *Norman*, 836 F.2d at 1303).

Plaintiff seeks $1,413.37 in attorneys' fees, which includes fees incurred as relating to Defendant Matrix and "limited to the time period after the first motion for approval was filed." ECF No. [53] at 6. Plaintiff's counsel, Mr. R. Martin Saenz, filed a declaration in support of Plaintiff's request for attorneys' fees. ECF No. [53-2]. Plaintiffs' counsel represents that the hourly rates of attorneys that worked on this matter are $400.00 per hour and $275.00 per hour, and the hourly rate for his paralegal is $75.00 per hour. ECF No. [53-2] ¶¶ 15–17. Counsel submits that this rate is reasonable "[b]ased on his experience, familiarity with rates charged by other lawyers, and fees awarded in similar litigation." *Id.* Counsel attests that he has primarily practiced in employment law for more than fifteen years and "can personally attest to the fact that [these hourly rates] reflect[] the skill and experience of each of the attorneys that have worked in this case." *Id.* ¶¶ 6, 16. Counsel also attests that his paralegal's hourly rate of $75.00 is reasonable. *Id.* ¶ 17. Based on the Court's review of counsel's experience in comparison to the reasonable rate

10

within the Eleventh Circuit, the undersigned finds that $400.00 and $275.00 per hour are reasonable rates for Plaintiff's counsel and $75.00 is a reasonable hourly rate for his paralegal. *See Phiffer*, 2021 WL 6424630, at *2 (finding that: (1) attorney who had practiced over twenty years and was "very skilled" in FLSA cases was entitled to an hourly fee award of $450.00 per hour; (2) attorney with approximately six years' experience, including about two years' civil litigation experience, was entitled to an hourly fee award of $250.00 per hour; and (3) $100.00 per hour was the appropriate hourly fee for paralegals for whom the Court "d[id] not have any information on the credentials," based on awards to paralegals in other cases).[3]

Along with his declaration, Plaintiffs' counsel submitted "a detailed log generated from the contemporaneous daily records of the time [his] office spent on this case" which "only includes fees incurred relating to [Defendant Matrix] and limited to the time period after the first motion for approval was filed." ECF No. [53-2] ¶ 13. Plaintiff's counsel attests that "the number of hours spent were reasonable and necessary in light of the nature of this litigation and all of the circumstances surrounding it." *Id.* ¶ 14. According to the log of billing entries, the total time expended by Plaintiff's attorney(s) for which Plaintiff seeks fees is 5.05 hours, and the total time expended by the paralegal for which Plaintiff seeks fees is .15 hours. *See* ECF No. [53-2] at 5. In order for a court to determine whether a reasonable number of hours were expended on the litigation, a fee applicant must set out the general subject matter of the time expended by the attorney "with sufficient particularity so that the court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)).

---

[3] The undersigned notes that although Mr. Saenz submits in his declaration the fee for some attorney(s) that worked on this matter is $400.00, the billing entries log detailing the fees sought by Plaintiff do not include any work performed by an attorney billing at the $400.00 hourly rate. *See* ECF No. [53-2] at 5.

A fee applicant must exercise billing judgment by excluding "excessive, redundant or otherwise unnecessary [hours]." *Hensley*, 461 U.S. at 434. Where a fee applicant does not exercise billing judgment, "courts are obligated to do it for them." *Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). Thus, when a request for attorneys' fees is unreasonably high, the court "may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut," but it cannot do both. *See Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). In deciding between the two options available to the Court, an hour-by-hour approach is sometimes preferable, but the "fee documentation can be so voluminous as to render an hour-by-hour review impractical." *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994). Upon review of the detailed billing log, the Court finds the number of hours expended reasonable. Accordingly, the undersigned finds that Plaintiff is entitled $1,413.37 in attorneys' fees.

Finally, the undersigned recommends that the Court retain jurisdiction to consider any future attorneys' fees and costs associated with Plaintiff's collection of a judgment entered by this Court.

### III. CONCLUSION

Based on the foregoing, it is hereby **RECOMMENDED** that Plaintiff's Motion for Final Default Judgement as to Defendant Matrix Construction Builders, Inc. *Only*, ECF No. [53], be **GRANTED IN PART AND DENIED IN PART**, as set forth herein.

### IV. OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Court within **FIVE (5) DAYS** of being served with a copy of this Report and Recommendation. The undersigned has shortened the objection period because Defendant Matrix has not made any appearance in this lawsuit. Failure to timely file objections will bar a *de novo*

determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on June 2, 2022.

_____
**JACQUELINE BECERRA**
**United States Magistrate Judge**